James **GILLETTE**, Plaintiff–Appellant,

v.

Duane **DELMORE**; Jerry Garriott and the City of Eugene, a political subdivision of the State of Oregon, Defendant–Appellee.

No. 87–3533.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 8, 1989.

Decided Oct. 5, 1989.

David C. Force, Eugene, Or., for plaintiff/appellant.

Steve C. Baldwin, Eugene, Or., for defendant/appellee.

Before CANBY, THOMPSON and LEAVY, Circuit Judges.

CANBY, Circuit Judge:

James Gillette appeals the district court's summary judgment in favor of the City of Eugene, Oregon, on his claim under 42 U.S.C. § 1983 for unlawful discharge from public employment in violation of his first amendment rights. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEEDINGS BELOW

On May 19, 1983, James Gillette, a fireman of the City of Eugene, Oregon, was

part of a unit dispatched to the home of James Dunsmoor in response to an emergency call. The caller had indicated that Dunsmoor had consumed valium, percodan, and alcohol and that, although Dunsmoor was conscious, he was very confused. Upon the unit's arrival, Dunsmoor ordered the firemen and police officers to leave. The City had a policy directing that persons suspected of suffering from a drug overdose be taken to the hospital for evaluation, even over that person's objection. Gillette asserts that, although Dunsmoor was conscious and capable of conversation, he was not told that he had to go to the hospital, or that he would be taken by force if necessary. Gillette asserts that police officers used excessive force on Dunsmoor, including choking him, handcuffing him to a stretcher, and banging his head on the metal stretcher.

During these events Gillette commented to the fire captain that "this is not being handled well." After Dunsmoor had been forcibly loaded into the ambulance, Gillette expressed his anger to the policeman who had choked Dunsmoor and banged his head on the stretcher, stating that "it would be just as well to let him die, as kill him ourselves." While at the hospital waiting for Dunsmoor to be examined, Gillette commented to both fire and police personnel that they had "stripped the man of his dignity."

Dunsmoor needed no medical treatment, and he was released after a doctor examined him. On the way back to the fire station, Gillette said to other firemen that he would help Dunsmoor in a suit against the City if Dunsmoor were forced to pay the expenses of being taken to the hospital, stating "when you take a man against his will, and then you're wrong, why should that guy have to pay his medical bills, when you didn't give the guy an honest chance in the first place?"

On May 31, 1983, Battalion Chief Delmore notified Gillette that he was charged with three incidents of misconduct that warranted his termination. Gillette was suspended from duty, with pay, and was notified of his right to respond to the charges. The three incidents specified follow: [1]

On April 4, 1983, two crew members at Eugene Fire Station 5 witnessed an incident in which you used vulgar and abusive language while engaged in a telephone conversation with an employee of Lane County and then, following the conversation, displayed behavior unbecoming to a City employee.

On May 19, 1983, at approximately 2341 hours, while involved at an emergency medical incident at 2292 Jefferson Street, Eugene, Oregon, you were heard making remarks which were contradictory to the emergency treatment being provided to the patient and which also jeopardized management of the patient and safety of the personnel providing the care.

On April 22, 1983, while assigned as a medic unit driver available for emergency response, you were observed sleeping in clear view of the public in the second floor lobby of the Lane Community College Downtown Center, 1159 Williamette Street, Eugene, Oregon, during the time the EMT III assigned to the unit was attending a review class for an EMT IV test.

Gillette responded to the charges at a meeting held June 6, 1983. He was terminated, effective June 7, 1983. Gillette appealed his termination to the Fire Chief, as provided for by regulation. Fire Chief Hall confirmed Gillette's termination by letter on July 14, 1983. Gillette then filed a grievance, under the collective bargaining agreement between the City and the fire fighters, and it proceeded to arbitration. Gillette was reinstated, without back pay or benefits, on January 11, 1984. After other alleged misconduct, Gillette's employment was again terminated in June, 1984.

Gillette filed suit against Duane Del-

---

1. The list of charges is taken from the May 31, 1983 letter from Battalion Chief Delmore to Gillette.

more, battalion chief,[2] Jerry Garriott, battalion chief, and the City of Eugene, alleging that his June 1983 termination was in violation of 42 U.S.C. § 1983 because he was terminated for speech protected by the first amendment. He also alleged that Garriott had violated due process in terminating Gillette a second time, in May 1984. Gillette subsequently filed an amended complaint, and dropped the count against Garriott for the second termination. Garriott then moved to have himself dismissed as a defendant. The district court granted this motion, and subsequently awarded $533.50 in attorneys' fees against Gillette under Rule 11 of the Federal Rules of Civil Procedure.

The City moved for summary judgment. The district court awarded summary judgment to the City on the ground that Gillette's speech at the Dunsmoor incident was not constitutionally protected. An alternative holding was that, even if his speech was protected, the other two incidents of misconduct were enough to sustain the termination. The district court also awarded partial summary judgment on several issues in the case, including whether Gillette was impermissibly terminated for his political activities, whether Gillette's remarks during a telephone conversation were protected by the first amendment, and whether he would be entitled to damages in the amount he withdrew from the public employees' retirement plan, plus government matching funds that he lost as a result of his withdrawal. Gillette now appeals these rulings.

## DISCUSSION

We review a summary judgment de novo, applying the same standard the district court uses. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629–30 (9th Cir.1987). Similarly, we review de novo the district court's conclusions regarding whether Gillette's statements are constitutionally protected, because that issue is one of law. *Connick v. Myers*, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983).

*A. Unlawful Discharge from Employment—the Dunsmoor Incident*

We must follow a three-step approach to review terminations that allegedly violate the free speech clause of the first amendment. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). We must determine: 1) whether Gillette's speech is entitled to constitutional protection, *see Pickering v. Board of Education*, 391 U.S. 563, 569–72, 88 S.Ct. 1731, 1735–37, 20 L.Ed.2d 811 (1968); 2) whether, if protected, the speech was a substantial or a motivating factor in the action taken against Gillette, *see Mt. Healthy*, 429 U.S. at 285–87, 97 S.Ct. at 575–76; and 3) whether the City demonstrated that the same action would have been taken in the absence of the protected activity, *see Allen v. Scribner*, 812 F.2d 426, 433–36 (9th Cir. 1987), *amended*, 828 F.2d 1445 (9th Cir. 1987).

To be protected by the first amendment, Gillette's speech as an employee must first be shown to involve a matter of public concern. *See Connick*, 461 U.S. at 146, 103 S.Ct. at 1689. If it does, then Gillette must show that his interest as a citizen in commenting upon matters of public concern outweighs any adversely affected interest of the City in promoting efficient delivery of public services. *See id.* at 142, 103 S.Ct. at 1687.

■ We cannot agree with the district court that Gillette's statements do not involve a matter of public concern. Speech that can fairly be considered as relating to any matter of political, social, or other concern to the community is constitutionally protected. *Connick*, 461 U.S. at 146, 103 S.Ct. at 1689. Gillette's speech concerned the manner in which police and fire fighters performed their duties on a particular occasion. Gillette testified in his deposition that the police and fire personnel did not tell Dunsmoor they were taking him to the hospital for medical treatment, and that certain police officers and fire fighters

---

2. Delmore was subsequently dismissed from the suit for lack of personal jurisdiction.

used excessive force. If we assume Gillette's deposition testimony is true, as we must for summary judgment purposes, Gillette's speech concerns a matter of public concern. His comments may well raise questions concerning whether persons should be taken to the hospital against their will, what notice they should receive, and what degree of force is appropriate. The fact that Gillette's speech was not directed to the public at large, to inform it of the perceived problems, is not critical to the inquiry of whether the speech involves a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378, 386, n. 11, 107 S.Ct. 2891, 2898, n. 11, 97 L.Ed.2d 315 (1987).

 The next step in our analysis is to balance the interest of Gillette, as a citizen, in commenting on matters of public concern against the interest of the City, as employer, in promoting the efficiency of the public services it performs through its employees. *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. This balancing focuses on the effective functioning of the public employer's enterprise. It is true, as the City contends, that the City may restrict an employee's speech that impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the successful operation of the department. *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899. Avoiding such interference can be a strong state interest. *Id.* But there are questions of material fact in this case that cannot be resolved upon summary judgment. The City argues that Gillette's statements interfered with the mission of the fire department, and made a difficult situation even more difficult and more dangerous for both the witnesses and fellow officers. Gillette's affidavits, however, indicate that Gillette's statements did not agitate Dunsmoor or the witnesses, but helped calm them down. These factual questions are appropriately resolved at trial. See *McGee v. South Pemiscot School Dist.*, 712 F.2d 339, 342 (8th Cir.1983).

 With regard to causation, the City has conceded that the Dunsmoor incident was a substantial factor in Gillette's termination.[3] The City thus has the burden of showing that Gillette would have been terminated for the two other incidents outlined in the notice of charges absent the Dunsmoor incident. The district court found that two other charges were serious enough to warrant termination, given Gillette's prior disciplinary history. This, however, is not enough. The City must show that it *would* have terminated him, not that it *could* have. *Allen*, 812 F.2d at 435. Gillette raises serious fact questions regarding this issue. In his deposition, he testified that no charges relating to the sleeping and swearing incidents were filed until more than five weeks after they occurred, and only after the Dunsmoor incident occurred. Gillette also testified that fire department management requested fellow fire fighters to report any questionable incidents to them after the Dunsmoor incident. Given the disputed facts on this issue, it could not be resolved on summary judgment.

### B. *Partial Summary Judgment Issues*

The district court awarded partial summary judgment to the City on several other issues. Because we must remand for trial, we have reviewed these matters also.

#### 1. Political Activities

 Gillette contends that his political activities, revolving around city budget issues, were a cause for his termination. The City vehemently denies that Gillette's activities played any part in his termination. The affidavits submitted by the City state that the only reasons that came into play when the City was making the termination decision were the three incidents outlined in the notice to Gillette, and his prior history of discipline problems. Chief Hall testified that he was unaware that Gillette was an advocate for reduced budgets and tax levies. To rebut this contention, Gillette states that most of the fire department knew of his activities, that he

---

**3.** *See* defendant's memorandum in support of motion for summary judgment.

had expressed his views at a meeting called to urge employees to support a City budget levy; and that he had filed a grievance that proceeded to the level of city manager regarding the acquisition of pickup trucks that Gillette felt was wasteful.

The allegations Gillette makes are not sufficient to meet his burden in opposing summary judgment. There is no evidence that any of his political activities or views caused, or were a substantial factor in, his termination. Gillette has shown no link between these events and his termination. The district court was correct in awarding partial summary judgment to the City on this issue.

### 2. The Phone Call as Protected Speech

■ One of the two incidents that the City offered as sufficient alternative grounds for Gillette's dismissal occurred during a telephone call between Gillette and the City Planning Director. Gillette argues that his speech during that phone call was also constitutionally protected, so it could not be an alternative ground for termination.

Here, as before, Gillette's speech must involve a matter of public concern to be protected. We have no difficulty agreeing with the district court that Gillette's conversation with the City Planning Director, Roy Burns, involved solely matters of private concern. Gillette was upset with Burns because Burns was apparently holding up a building permit for a lot owned by Gillette because Gillette hadn't turned in some required paper work for the road and a right-of-way. This was a dispute about Gillette's own property, not a matter of public concern. We therefore affirm the district court's award of partial summary judgment on this issue.

### 3. Retirement Plan Contributions as Damages

■ The City contends that, as a matter of law, Gillette will not be able to prove that he is entitled to the City's contribu-

tions made to an employee retirement plan which Gillette lost as a result of withdrawing his funds. Whether these damages are speculative is a question of fact to be determined at trial. There is insufficient evidence in the record to determine whether Gillette had any vested right in those funds, and whether there is a sufficient causal connection between his termination, his withdrawal of funds from the retirement plan, and the resulting loss of the City's contributions. In addition, his entitlement to replace the funds in the retirement plan once he was reinstated may also affect this issue. On this record, summary judgment was inappropriate. We therefore reverse the partial summary judgment on this issue.

### C. *Attorneys' Fees Awarded Under Rule 11*

■ Gillette originally included Jerry Garriott, a battalion chief, as a defendant, and claimed that Garriott violated Gillette's due process rights by terminating him the second time. Gillette subsequently asked the court for permission to amend the complaint, which was granted. The amended complaint dropped the due process claim. In the motion to amend the complaint, Gillette stated that the original pleading was filed hastily, and that the drafter of the complaint was unfamiliar "with the full context of the facts asserted." In the affidavit supporting the motion, Gillette's attorney stated that he had been under time pressure to file the complaint,[4] and that he "had misunderstood one of the underlying legal/factual theories" of Gillette's case. Garriott moved to have himself dismissed as a defendant because all the claims against him had been dropped. Gillette did not object, except to move that the complaint be dismissed as to Garriott without prejudice. The district court granted the motion to dismiss without prejudice, and gave Garriott leave to file a motion for attorneys' fees. The district court awarded

---

**4.** Gillette's attorney was apparently retained shortly before the statute of limitations would have run on the first termination.

attorneys' fees of $553.50 under Rule 11 of the Federal Rules of Civil Procedure.

Sanctions under Rule 11 are proper only when a pleading or motion is frivolous, legally unreasonable, or without factual foundation. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir.1986). Here, there is no evidence that the claim is frivolous or without factual foundation. Gillette's attorney made a strategic decision that this type of claim would best be handled differently, and in a different court. Gillette subsequently brought suit in state court. The district court did not make any findings that the claim was frivolous, and, in fact, dismissed the claim without prejudice. Because our review of the record does not indicate any claims were filed for an improper purpose, or were frivolous, without legal merit or factual support, we reverse the award of attorneys fees under Rule 11.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.