182 F.3d 1083 (9th Cir. 1999)
 TRUDI LYTLE, Plaintiff-Appellee,
v.
R. WONDRASH, individually; EVA SIMMONS, individually; EDWARD GOLDMAN, individually; THOMAS RODRIGUEZ, individually, Defendants-Appellants.
and
BRIAN CRAM; P. KAY CARL; CLARK COUNTY SCHOOL DISTRICT, a political subdivision of Clark County; DOES 1-X and ROE CORPORATIONS 1-X, inclusive, Defendants.
 No. 98-15146
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 10, 1999--San Francisco, California
Filed July 7, 1999
 
 [Copyrighted Material Omitted]
 COUNSEL: Kathy M. Banke, Crosby, Heafey, Roach & May, Oakland,
 California, for the defendants-appellants.
 Robert D. Vannah, Vannah & Costello, Las Vegas, Nevada, for the plaintiff-appellee.
 Appeal from the United States District Court for the District of Nevada David A. Ezra, District Judge, Presiding. CV-95-01028-DAE/RJJ
 Before: Harlington Wood, Jr.,[1] David R. Thompson and Sidney R. Thomas, Circuit Judges.
 THOMPSON, Circuit Judge:
 
 OPINION
 
 1
 Opinion by Judge Thompson; Dissent by Judge Thomas
 
 OVERVIEW
 
 2
 Trudi Lytle, an elementary school teacher in the Clark County School District in Nevada ("the District") brought suit under 42 U.S.C. S 1983 against the District and a group of present and former school administrators. She alleged the defendants had harassed her and violated her First Amendment rights to free speech and access to the courts in retaliation for a prior lawsuit she had filed against the District and four individuals, including the then principal of the elementary school where she taught. Lytle had prosecuted her prior action to a favorable conclusion, winning a jury verdict of $135,000 and reinstatement.
 
 
 3
 The individual appellant-defendants (the "Appellants") moved for summary judgment, contending they were entitled to qualified immunity. The district court denied their motion, and this appeal followed.
 
 
 4
 We have jurisdiction under 28 U.S.C. S 1291, see Mitchell v. Forsyth, 472 U.S. 511, 524-25 (1985), and we reverse. Lytle is a public employee. Applying the balancing test of Pickering v. Board of Educ., 391 U.S. 563, 568 (1968), as required by Brewster v. Board of Educ., 149 F.3d 971, 979-80 (9th Cir. 1998), petition for cert. filed, 67 USLW 3484 (Jan. 11, 1999) (No. 98-1145), we hold that it was not "patently unreasonable for [the Appellants] to conclude that the First Amendment did not protect [Lytle's conduct in prosecutingher prior lawsuit]." Id. at 980. Thus, the constitutional right Lytle asserts in the present case was not clearly established at the time the Appellants allegedly retaliated against her, and as a result they are entitled to qualified immunity.
 
 BACKGROUND
 
 5
 In her previous lawsuit, Lytle alleged that she was transferred and disciplined for publicly criticizing a school education program. A jury awarded her $135,000 in damages and the district court ordered that she be reinstated as a teacher. Pursuant to that order, the District reinstated her, but assigned her to teach kindergarten instead of fourth grade, which she had previously taught. On the first day ofschool, she filed an emergency motion for clarification of the reinstatement order. The district court concluded that the District had complied with the reinstatement order, and Lytle then taught kindergarten during the 1994-95 term.
 
 
 6
 On October 26, 1995, Lytle commenced the present lawsuit. She asserted two causes of action, one for violation of her First Amendment right of free speech and another for violation of her First Amendment right of access to the courts. See Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). She alleged that the defendants had retaliated against her for having filed her previous lawsuit. She claimed that Appellants Wondrash and Simmons made disparaging comments about her to a student's parent; the District gave her only one-and-a-half days to prepare her classroom, whereas other teachers were given three days; the District returned her teaching materials damaged, three weeks after the school term began; the District improperly disciplined her for a substitute teacher's decision to teach students in the hallway; Appellant Wondrash requested that an office manager keep a log of interactions with Lytle; Appellant Simmons accompanied Lytle on Lytle's visits to observe other kindergarten classes, although Simmons did not routinely accompany other teachers to classroom observations; and Simmons and Wondrash held five meetings with Lytle ostensibly to discuss various school-related issues, including preparation of her classroom, observations of other kindergarten classes, and instructional materials, but the real purpose of these meetings, according to Lytle, was to harass her in retaliation for her prior litigation.
 
 
 7
 The Appellants and the District moved for summary judgment. The district court granted summary judgment in their favor on the merits as to Lytle's free speech claim, but denied their motion on the merits as to Lytle's court access claim. The district court also denied the Appellants' alternative summary judgment motion for qualified immunity. The Appellants then filed this timely appeal, raising only the qualified immunity issue. The District has not appealed, and Lytle has not filed a cross-appeal. The sole issue, therefore, is whetherthe Appellants are entitled to qualified immunity on Lytle's First Amendment claim that they violated her right of access to the courts.
 
 STANDARD OF REVIEW
 
 8
 The denial of qualified immunity by summary judgment is subject to immediate appeal under 28 U.S.C. S 1291. See Mitchell, 472 U.S. at 530. We review de novo a district court's decision on qualified immunity in a 42 U.S.C. S 1983 action. See Elder v. Holloway, 510 U.S. 510, 516 (1994). In reviewing the district court's summary judgment denial of qualified immunity, we review the "purely legal" issue of "whether facts alleged [by the plaintiff] support a claim of violation of clearly established law." Mitchell, 472 U.S. at 528, n.9; accord Armendariz v. Penman, 75 F.3d 1311, 1317 (9th Cir. 1996) (en banc). We must assume the relevant facts in the light most favorable to Lytle, and then determine whether the Appellants are nonetheless entitled to qualified immunity as a matter of law. See Moran v. State of Washington, 147 F.3d 839, 844 (9th Cir. 1998).
 
 DISCUSSION
 
 9
 Qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity safeguards "all but the plainly incompetent or those who knowingly violate the law. . . . [If] officers of reasonable com petence could disagree on th[e] issue [of whether a chosen course of action is constitutional], immunity should be recognized." Malley v. Briggs,475 U.S. 335, 341 (1986).
 
 
 10
 In determining whether public officials are entitled to qualified immunity for their conduct, we must examine that conduct in the light of the constitutional right the plaintiff asserts. Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 11
 The constitutional right Lytle asserts is the right to access the courts. In Soranno's Gasco, 874 F.2d at 1314, we held that deliberate retaliation against an individual for filing a complaint violated the exercise of his right of access to the courts and was actionable under 42 U.S.C. S 1983. The Appellants argue Lytle's constitutional claim is different. Lytle not only filed a previous complaint, she actually had her day in court, litigated her claim, and won her case. The Appellants contend, therefore, that nothing they did precluded Lytle from having her day in court or violated any right she had to access the court. She had fully accessed the court before the Appellants allegedly retaliated against her.
 
 
 12
 Courts have taken different positions on this issue. In Smith v. Smith, 578 F. Supp. 1373, 1373-74 (E.D. Pa. 1984), the court held that an inmate's allegations of retaliation for prior lawsuits would state a claim for deprivation of the right of access to courts. Sorrano's Gasco seems to support this view. See Soranno's Gasco, 874 F.2d at 1314. In addition, the Sixth Circuit has specifically recognized the potential unconstitutionality of retaliation for prior litigation. In Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953, 956 (6th Cir. 1986), the plaintiff claimed he was kicked off the university football team in retaliation for participating in a prior state lawsuit. Although the court decided the case on other grounds, the court noted that the plaintiff arguably stated a claim actionable under section 1983. Id. at 959. Similarly, the Eleventh Circuit in Hall v. Sutton, 755 F.2d 786 (11th Cir. 1985), recognized the viability of a prisoner's section 1983 claim against prison officials for retaliation against him because of his prior litigation against them. The Fifth Circuit, however, has upheld a claim of qualified immunity where it was not clearly established at the time the officers retaliated against an individual that retaliation for prior litigation was unconstitutional. See Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995).
 
 
 13
 We need not resolve the question whether harassment for prior litigation violates a constitutional right to access the courts, or whether a reasonable school official would have understood that it did. Lytle is a public employee. We must consider that status in determining whether, at the time the Appellants allegedly retaliated against her, it was clearly established that the First Amendment protected her prior litigation.
 
 
 14
 Because Lytle is a public employee, to warrant First Amendment protection she must first establish that her prior litigation involved a matter of public concern. See Rendish v. City of Tacoma, 123 F.3d 1216, 1223 (9th Cir. 1997) (holding that a public employee cannot present a cognizable section 1983 claim challenging a retaliatory employment decision unless the litigation involves a matter of public concern), cert. denied, 118 S. Ct. 2368 (1998). Even if the litigation involved a matter of public concern, Lytle must also establish that her right to pursue that litigation outweighed "any adversely affected interest of [her public employer] in promoting efficient delivery of public services." Gillette v. Delmore, 886 F.2d 1194, 1197 (9th Cir. 1989). If it was not clearly established at the time the Appellants allegedly harassed Lytle that her previous litigation satisfied both of these requirements,the Appellants are entitled to qualified immunity. See Brewster, 149 F.3d at 978-982.
 
 
 15
 To determine whether Lytle's litigation involved a matter of public concern, we must determine the content, form, and context of her lawsuit. See Connick v. Myers, 461 U.S. 138, 147-48 (1983); Zorzi v. County of Putnam, 30 F.3d 885, 896 (7th Cir. 1994). Our inquiry into the protected status of the employee's conduct is one of law, not of fact. See Connick, 461 U.S. at 148, n.7.
 
 
 16
 This examination of content, form, and context requires an exploration of Lytle's previous litigation to determine whether her speech in that case involved a matter of public concern. See generally Rendish, 123 F.3d at 1224. The district court in the previous lawsuit applied the Pickering balancing test, weighing Lytle's First Amendment interest in speaking out and the District's need to provide public services effectively and efficiently. See Pickering, 391 U.S. at 568. In doing so, the court concluded that Lytle's speech involved a matter of public concern that was protected under the First Amendment.
 
 
 17
 We agree with this determination. Lytle's original lawsuit alleged (and the jury found) that she was transferred and disciplined for publicly criticizing a school education program. An expression relating to any matter of political, social, or any other concern to the community is protected. See Rendish, 123 F.3d at 1223 (citing Connick, 461 U.S. at 146). The District's school education program was within the community's concerns, so Lytle's speech criticizing the program constituted protected speech. Because the speech at the heart of Lytle's prior lawsuit was protected, her original lawsuit qualified as litigation regarding a matter of public concern.
 
 
 18
 Having determined that Lytle's prior litigation involved a matter of public concern, we next consider whether that litigation outweighed "any adversely affected interest of the [public employer] in promoting efficient delivery of public services." Gillette, 886 F.2d at 1197. In this part of the analysis, we apply the Pickering balancing test. See Brewster, 149 F.3d at 979. This test requires us to consider the
 
 
 19
 balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.
 
 
 20
 Pickering, 391 U.S. at 568.
 
 
 21
 In conducting the Pickering balancing test,"[w]hen close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." Connick, 461 U.S. at 151-52. If the public employer's interest in avoiding potential disruption outweighs the public employee's right to expression, no First Amendment protection exists. See Moran, 147 F.3d at 846.
 
 
 22
 The Pickering test "requires particularized balancing based on the unique facts presented in each case." Voigt v. Savell, 70 F.3d 1552, 1560-61 (9th Cir. 1995). Because Pickering's analysis as to whether a public employee's expression is constitutionally protected requires a fact-sensitive, contextspecific balancing of competing interests, "the law regarding such claims will rarely, if ever, be sufficiently`clearly established' to preclude qualified immunity under Harlow and its progeny." Moran, 147 F.3d at 847. Thus, we must decide whether the outcome of the Pickering balancing test so clearly favored Lytle that it would have been patently unreasonable for the Appellants to conclude that their actions were lawful. See Brewster, 149 F.3d at 980-81; Romero v. Kitsap County, 931 F.2d 624, 627-28 (9th Cir. 1991).
 
 
 23
 Several Pickering factors weigh in favor of the public employer's need to maintain an efficient and cohesive school environment conducive to learning. The District has a legitimate interest in preventing disruption spawned by Lytle's prior litigation. See Moran, 147 F.3d at 850. When thedistrict court reinstated Lytle, the District was justified in assigning her to teach kindergarten rather than fourth grade. The District reduced Lytle's preparation time to two days, but for good reason: school had already started, and the three days normally allotted to teachers are partially devoted to administrative meetings. Appellants' various meetings with Lytle and attempts to document their interaction also served this purpose.
 
 
 24
 Courts have recognized the potential for employee expression to disrupt a harmonious work environment. See Rankin v. McPherson, 483 U.S. 378, 388 (1987); Brewster, 149 F.3d at 980; Hyland v. Wonder, 972 F.2d 1129, 1139 (9th Cir. 1992). Lytle's prior litigation created such disharmony. School staff members signed a petition critical of Lytle's actions and expressed concern to the school board about Lytle's behavior and her potential return to school. Principal Wondrash told the school board that Lytle's litigation caused significant turmoil among staff members. Moreover, proof of actual disruption is not required: an employer need only show that the public employee's expression caused "reasonable predictions of disruption." Waters v. Churchill, 511 U.S. 661, 673 (1994).
 
 
 25
 The potential for an employee's expression to interfere with the fulfillment of her own office duties is also relevantto the Pickering analysis. See Rankin, 483 U.S. at 388; Hyland, 972 F.2d at 1139. Lytle's prior litigation created a rift between her and both her coworkers and her superior, Dr. Wondrash. An employee's "lack of trust and confidence" in an employer may potentially compromise on-the-job performance. See Brewster, 149 F.3d at 981 (citing Rendish, 123 F.3d at 1225). Further, we have recognized that close working relationships require mutual trust and respect to be successful, and that these are the types of relationships where "a wide degree of deference to the employer's judgment is appropriate." Connick, 461 U.S. at 151-52.
 
 
 26
 In considering the Pickering balancing test, we recognize, of course, that certain considerations favor Lytle. As we noted earlier, speaking out against a school education program clearly constitutes a matter of public concern. Also weighing against the Appellants in this analysis is the fact that a jury found meritorious Lytle's original claim for retaliation for speaking out.
 
 
 27
 Nonetheless, we need not dwell on each side's merits in the Pickering balance because we are faced with the "much simpler task," Moran, 147 F.3d at 839, of deciding whether the outcome of the Pickering balance so clearly favors Lytle that it would have been unreasonable for the Appellants to believe that their actions were lawful. See Brewster, 149 F.3d at 981.
 
 
 28
 The Pickering balance in this case does not provide clear-cut results. The outcome of that balance does not so clearly favor Lytle "that it would have been patently unreasonable for the school officials to conclude that the First Amendment did not protect [her litigation]." Brewster, 149 F.3d at 980. Accordingly, the constitutional right Lytle asserts was not clearly established at the time the Appellants allegedly retaliated against her, and as a result they are entitled to qualified immunity. See id. at 981.
 
 
 29
 REVERSED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Harlington Wood, Jr., Senior Seventh Circuit Court of
 Appeals Judge, sitting by designation.
 
 
 THOMAS, Circuit Judge, dissenting:
 
 30
 In a thoughtful opinion, the district court denied qualified immunity to six defendants in this case. Because I agree with the district court's analysis, I respectfully dissent.
 
 
 31
 Reliance on Brewster v. Board of Education, 149 F.3d 971(9th Cir. 1998), which grafted a balancing test under Pickering v. Board of Education, 391 U.S. 563 (1968), into a qualified immunity analysis, is misplaced in this case. The thrust of a Brewster inquiry is whether the purported exercise of First Amendment rights is constitutionally protected in a given context. As the Brewster court put it:
 
 
 32
 The issue the court must decide, therefore, is whether the outcome of the Pickering balancing test so clearly favored Brewster that it would have been patently unreasonable for the school officials to conclude that the First Amendment did not protect his speech.
 
 
 33
 149 F.3d at 980 (citation omitted).
 
 
 34
 However, that question is not at issue in this case. Indeed, everyone concedes that Lytle's prior litigation was constitutionally protected speech because it involved a matter of public concern. See Rendish v. City of Tacoma, 123 F.3d 1216, 1223 (9th Cir. 1997), cert. denied 118 S. Ct. 2368 (1998). Thus, it is inappropriate to apply the balancing discussed in Pickering and Brewster because the question of whether Lytle was engaged in constitutionally protected activity was already settled. A Pickering balancing is only required when there is doubt about whether the speech should be afforded constitutional protection given the context of the public workplace. Because that question is not at issue, it is not proper to apply an additional Pickering threshold analysis.
 
 
 35
 At the time of the alleged retaliatory actions in this case, Lytle had a clearly established right to be free from retaliation for exercising her First Amendment right of access to the courts. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (holding that deliberate retaliation by state actors against an individual's exercise of the right of access to the courts was actionable under S 1983). Pickering itself clearly established that a teacher's exercise of First Amendment rights could not furnish the basis for an adverse employment action. See Pickering, 391 U.S. at 574.
 
 
 36
 In a careful analysis of Lytle's contentions, Judge Ezra determined that she had presented proof of actual retaliation for the exercise of her right to access to the courts sufficient to survive summary judgment. Lytle tendered evidence that she was singled out for disciplinary treatment, refused access to classroom materials, improperly denied sick leave, given a written reprimand directing her to drop her complaints and received a death threat in a mailbox to which only school employees had access. Given that the type of sanction imposed by public employers need not be particularly great in order to find that rights have been violated, see Hyland v. Wonder, 972 F.2d 1129, 1135 (9th Cir. 1992), the district court appropriately concluded that triable issues of fact existed.
 
 
 37
 Even if a Pickering analysis were appropriate in this context, qualified immunity could not be granted on the basis of this record. There was no evidence tendered to the district court on the question of whether Lytle's assertion of her rights by successfully obtaining a judgment in a lawsuit "impeded the teacher's proper performance of his daily duties " or "interfered with the regular operation of the schools generally[,]" as Pickering put it. See 391 U.S. at 572-73. Indeed, the theory argued by the defense to the trial court was not that the exercise of rights was disruptive to school operation, but rather that legitimate, non-discriminatory reasons supported the adverse employment actions. There is a substantial difference between the theories. Although the existence of nondiscriminatory rationale is a legitimate defense, it is not a Pickering or Brewster defense. Thus, even if Brewster were applicable to this case, the record cannot support summary judgment on qualified immunity. To determine, as a matter of law, that Lytle's assertion of her constitutional rights was so disruptive that it interfered with schooloperation, one must resort to speculation outside the record. That, as a matter of law, is insufficient under Pickering, in which the Supreme Court made a specific finding that activities were "neither shown nor can be presumed to have in any way either impeded the teacher's proper performance of his daily duties in the classroom or to have interfered with the regular operation of the schools generally." Id. Although the arguments in this case clearly demonstrate that the parties are unhappy with each other, significant interference with government operations must be shown, not presumed.
 
 
 38
 Although the Pickering defense was asserted to us at oral argument, a different theory was argued to the district court. Thus, even if we were to deviate from the normal appellate practice of declining to address arguments that were not the basis for the appealed decision, see Peralta v. Heights Medical Center, Inc., 485 U.S. 80, 86 (1988), the record does not furnish us the ability to do so.
 
 
 39
 In sum, I respectfully suggest that (1) the majority has applied Brewster and Pickering to a circumstance for which balancing was not intended, or appropriate, and (2) the record does not support the results of a balancing inquiry articulated by the majority. I would affirm Judge Ezra's well-reasoned qualified immunity analysis. Accordingly, I respectfully dissent