**Andrew Keith WRIGHT, Plaintiff,**

v.

**U.S. ARMY, et al., Defendants.**

Nos. CIV. 02–967–PHX–EHC, CIV. 03–555–PHX–JAT, CIV. 03–1252–PHX–JAT, CIV. 03–1321–PHX–JAT, CIV. 03–1693–PHX–JAT.

United States District Court,
D. Arizona.

March 9, 2004.

———————

Andrew Keith Wright, Goodyear, AZ, pro se.

Arthur G. Garcia, Esq, James C. Hair, Jr., Esq, US Attorney's Office, Phoenix, AZ, for Defendants.

### ORDER

CARROLL, District Judge.

Pending before the Court is Plaintiff's 1) Motion for Preliminary Injunction [Dkt. 75–3]; 2) Motion for Declaratory Relief [Dkt. 75–4]; and 3) Motion to Find Defendants in Contempt [Dkt. 75–5].

Attached as an Appendix to this Order is a chronology of events involving Plaintiff's military career from May 24, 2002, the date Plaintiff filed his initial Complaint, to date.

### *Relevant Procedural History*

On July 12, 2002, the Court entered a Preliminary Injunction enjoining the U.S. Government and any of its agencies having jurisdiction over Plaintiff's military status from 1) dropping Plaintiff from the rolls of the Army; and 2) terminating his active duty status as a Captain prior to December 20, 2002. Defendants did not appeal the Order granting the Preliminary Injunction.

On December 23, 2002, Defendants filed a Motion to Dismiss [Dkt. 54] and submit- ted an exhibit ("Letter") to their Motion to Dismiss, which stated:

> Based on the reasoning of the U.S. District Court in issuing the preliminary injunction, this command does not intend to take action to void Andrew Wright's status as a captain, U.S. Army Reserve, on or after 20 December 2002.
>
> Captain Wright is currently serving on a tour of extended active duty. Future actions after 20 December 2002 to extend that active duty tour or to allow that tour to terminate on its end date with Captain Wright's release to the Individual Ready Reserve will be in accordance with all laws and regulatory standards applicable to similarly situated officers of the U.S. Army Reserve who are serving on active duty.

[Dkt. 57, p. 2; Dkt. 54, Exh. 1].[1]

On January 17, 2003, despite the attestations in the Letter one month earlier and without filing with the Court, the Department of the Army Central Personnel Security Clearance Facility Plaintiff issued an "Intent to Revoke" Memorandum, which notified Plaintiff that a preliminary decision had been made to revoke his security clearance pursuant to the Smith Amendment. [Dkt. 67, Exh. 6–5].

In its Order dated February 28, 2003, the Court granted Defendants' Motion to Dismiss [Dkt. 54] because "Plaintiff ha[d] received the relief he requested." [Dkt. 57, p. 4].[2] The Court dismissed the case as moot based on Defendants' representations in its December 2002 Motion to Dismiss.[3] [Dkt. 57, p. 4].

---

1. Letter from Lieutenant Colonel Rafe R. Foster to U.S. Attorney Paul K. Charlton, which was attached as Exhibit 1 to Defendants' Motion to Dismiss [Dkt. 54].

2. The Court was unaware on the date of its Order that an "Intent to Revoke" Memorandum had been issued.

3. Defendants contend that the Letter, *supra,* represents that the U.S. Army "would not seek to void plaintiff's status as a captain but would otherwise treat him as any similarly situated officer..." [Dkt. 78, p. 3]. The Motion and the Court's Order confirmed that any actions concerning a change in Plaintiff's status as an officer in the U.S. Army Reserve would not be premised on matters which occurred prior to December 20, 2002.

On March 23, 2003, Defendants revoked Plaintiff's ten-year security clearance after only seven years, which Plaintiff alleges operated to "negate the ability of the Plaintiff to continue to serve on Active Duty with the Army or obtain an assignment in the Army Reserve." [Dkt. 75, p. 2, filed February 2, 2004]. On February 2, 2004, Plaintiff filed a "Motion to Re-Open case, Motion for Temporary Restraining Order and Preliminary Injunction, Motion for Declaratory Relief, and Motion to Find Defendants in Contempt." [Dkt. 75].

On February 3, 2004, Defendants notified Plaintiff, by Memorandum, of an upcoming hearing to take place at the Armed Forces Reserve Center in North Little Rock, Arkansas, on February 18, 2004. The "subject" of the Memorandum was listed as "Notification of Show Cause Board." The Memorandum, issued by the Department of the Army, stated that "[t]he hearing [is] to consider CPT Andrew K. Wright... for administrative separation[4] for intentional misstatement of facts in official statements or records, for the purpose of misrepresentation and conduct unbecoming an officer..."

On February 12, 2004, the Court granted Plaintiff's Motion to Re-Open the case to consider actions the U.S. Army took subsequent to the Court's Order of February 28, 2003, which dismissed Plaintiff's claims because he had received the relief requested. Further, the Court granted Plaintiff's Motion for Temporary Restraining Order and enjoined Defendants, or any division thereof, from taking any action to discharge, demote, or otherwise voiding or suspending Plaintiff's status on inactive duty as a Captain in the U.S. Army Reserve for a period often (10) days from the date of the Order or as extended by the Court.

Plaintiff claims the U.S. Army is now "attempt[ing] to achieve indirectly what the Court has ruled they were estopped from doing" based on an alleged misrepresentation in July 2003, discussed *infra.* [Dkt. 75, p. 2]. At issue is whether the Court acted based on representations that Plaintiff had received the relief requested in granting Defendants' Motion to Dismiss, and if so, whether events subsequent to the Court's Order of February 28, 2003, have occurred which justify Plaintiff's dismissal, or whether Defendants are retaliating against Plaintiff.

The pending, although now-postponed, military proceedings to terminate Plaintiff, considering that the U.S. Army "[did] not intend to take action to void Andrew Wright's status as a captain, U.S. Army Reserve, on or after 20 December 2002" [Dkt. 54, Exh. 1], are arguably impacted by prior proceedings in this case.

On February 20, 2004, the Court held an evidentiary hearing to determine whether the U.S. Army had acted in contravention to its representations, *supra,* in its Motion to Dismiss, and whether to issue a preliminary injunction.

### Legal Standard—Preliminary Injunction

■ In order to obtain a preliminary injunction, a movant must show either the likelihood of success on the merits and the possibility of irreparable injury *or,* alternatively, the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 516 (9th Cir.1993).

■ In other words, a preliminary injunction may issue when the movant shows " 'either a likelihood of success on the mer-

---

**4.** The Court notes that the upcoming hearing in Arkansas is for consideration of "administrative separation" as opposed to "release to the Individual Ready Reserve" as stated in Defendants' letter of December 12, 2002.

its and the possibility of irreparable injury, or that serious questions going to the merits were raised and the balance of hardships tips sharply in its favor.'" *Immigrant Assistance Project of Los Angeles Cty. Federation of Labor (AFL–CIO) v. I.N.S.*, 306 F.3d 842, 873 (9th Cir.2002)(quoting *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1517 (9th Cir.1992)).

### Discussion

#### Plaintiff's Allegations

Plaintiff is proceeding pro se. Plaintiff argues that Defendants, in their December 2002 Motion to Dismiss [Dkt. 54], misrepresented their position to the Court. Plaintiff contends that the Order dismissing his claims, based on Defendant's representations, requires the U.S. Army to reinstate his security clearance. Further, Plaintiff alleges that the revocation of his security clearance on March 23, 2003, was in retaliation for his legal actions against the U.S. Army.[5] Specifically, Plaintiff "contends that several actions committed by the Defendants are indirect [sic] contempt of this Court and in violation of an agreement submitted in writing in this Court to 'treat the Plaintiff as any other Officer' and to take no action to 'divest

him of his status as an Officer in the U.S. Army Reserve.'" [Dkt. 67, p. 2]. Plaintiff's referral to "several actions" stems from the revocation of his security clearance [6] and his scheduled hearing in Arkansas before the involuntary separation Board to consider involuntary discharge. Plaintiff argues that any misrepresentation as to the status of his security clearance on an application for voluntary deployment to Honduras by Plaintiff was due to Plaintiff's reliance on the Court's Order, which he believes required reinstatement of his security clearance.

Additionally, Plaintiff alleges he has been a reliable and dutiful soldier. Plaintiff submitted a letter from Lieutenant Colonel Scott A. Westley, dated February 25, 2003, which states "I highly recommend approval of this waiver request and that CPT Wright's security clearance be restored. CPT Wright has served with this unit for over two years and I have personally worked with him for eight months of that period. I do not doubt his loyalty to our country or his willingness to serve our Army." [Dkt. 67, Exh. 4–12].[7]

#### Defendants' Allegations

Defendants argue that the Court, if it accepts Plaintiff's argument, may be erecting "an impenetrable shield against any

---

**5.** Plaintiff also alleges due process claims that will not be addressed, as those claims were dismissed pursuant to the Court's Order dated February 28, 2003. The claim before the Court is that of alleged retaliation, after the same Court Order, in violation of the First Amendment.

**6.** Plaintiff avers in his Motion to Find Defendants in Contempt of Court and Motion for Declaratory Judgment that Defendants revoked Plaintiff's security clearance on March 23, 2003, twenty-three (23) days after the Court's issuance of it's Order. [Dkt. 67, p. 4](Plaintiff mistakenly lists the year as 2002, but it is evident Plaintiff intended the year to be reflected as 2003.). Plaintiff also has contended, at the evidentiary hearing of February

20, 2004, that the same Order required Defendants to reinstate his security clearance, the revocation of which was pending at the time of the Court's Order.

**7.** There exist numerous other positive reviews in Plaintiff's personnel file. One performance evaluation states that "CPT Wright is an outstanding officer" who has always been willing "to go the extra mile to complete the mission" and who "should be promoted and considered for positions of increasing responsibility." [Hearing Exh. 66, p. 73]. Another performance evaluation avers that Plaintiff has "strong convictions and stands behind them" and is "[u]nfazed by rapidly changing situations." [Hearing Exh. 66, p. 80].

subsequent adverse personnel actions" against Plaintiff. [Dkt. 78, p. 5].

During the evidentiary hearing on February 20, 2004, Defendant argued that Plaintiff intentionally misrepresented his security clearance status on his application, dated July 10, 2003, which was submitted for voluntary deployment with Joint Task Force Bravo to Honduras. Plaintiff represented his security clearance as "Secret." [Hearing Exh. 29, p. 8].

A Memorandum issued on December 7, 2003, and signed by Major General James A. Sholar, referenced the July 2003 application, and advised Plaintiff that:

> Your misrepresentation of your clearance status to deploy to Honduras continues a *pattern of misrepresentation* previously documented by a January 27, 2003, Reprimand issued to you by MG Michael D. Rochelle, Commander, U.S. Army Recruiting Command. This Reprimand states that you committed various acts of fraud and deceit against the U.S. Army, including submitting a false statement in August, 1997, on a [Standard Form 86] security questionnaire [8] regarding a previous suspension of your clearance.

[Dkt. 67, Exh. 1–1; *See* Dkt. 9, p. 29](emphasis added).

Defendants allege that his recent representation involving his security clearance continues a pattern of dishonesty perpetrated by Plaintiff over the past fifteen years, and warrants an administrative separation hearing.

Defendants refer to the last paragraph in the Letter (Dkt.54, Exh. 1), which states, in part:

> Future actions after 20 December 2002 to extend that active duty tour or to allow that tour to terminate on its end date with Captain Wright's release to

the Individual Ready Reserve will be in accordance with all law and regulatory standards applicable to similarly situated officer of the U.S. Army Reserve who are serving on active duty.

As such, Defendants claim that they retained the right, pursuant to the above paragraph, to terminate Plaintiff for conduct prior to and known as of December 20, 2002, even though the Court dismissed the case as moot based on the fact that Plaintiff received the relief he requested.

*Reopening of the Case*

The Court reopened this case for the limited purpose of deciding whether *new* events had occurred subsequent to the Order dismissing Plaintiff's claims to justify terminating Plaintiff's status in the Ready Reserve. Despite Defendants claim that Plaintiff had an alleged "history" of misrepresentations, Defendants agreed in December 2002 to take no action to void Plaintiff's status as a captain. However, Defendants revoked Plaintiff's security clearance just twenty-three (23) days after the Court's Order, and later scheduled an administrative hearing, now postponed, for February 18, 2004, to determine his status as an officer in the U.S. Army Reserve.

*Scope of the Court's February 28, 2003 Order*

In its February 28, 2003 Order, the Court addressed mootness because Plaintiff "ha[d] received the relief he requested" with respect to his claims of Fifth Amendment and due process violations. However, the Court advised Plaintiff that any First Amendment retaliation claims "is properly brought in a separate action." [Dkt. 57, p. 4].

On March 24, 2003, Plaintiff filed a separate action (CIV 03–555) [9], which the Court consolidated with this action (CIV 02–0967)

---

8. Application to the National Guard, dated August 13, 1997.

9. Case No. 03–0555 is consolidated with Case No. 02–0967 due to its similar issues.

pursuant to an Order dated February 12, 2004.

Plaintiff has not received the "relief he requested" with respect to his First Amendment claims because the claims had not been resolved by dismissal of the case. Therefore, Plaintiff's First Amendment retaliation claim is before the Court at this juncture. The Court will determine whether Defendants' contention that it did "not intend to take action to void Andrew Wright's status as a captain, U.S. Army Reserve, on or after 20 December 2002" represented that the U.S. Army did not intend to pursue dismissal, or take any action leading to dismissal, based upon Plaintiff's alleged pattern of dishonesty and misrepresentations occurring prior to December 20, 2002. If Defendants' intent is determined as such by the Court, then any adverse employment action against Plaintiff for his alleged dishonesty and misrepresentations are suspect absent non-pretextual reasons for such action.

Defendants argued at the hearing on February 20, 2004, that Plaintiff's recent misrepresentation on July 10, 2003, concerning the status of his security clearance after the clearance had been revoked on March 23, 2003, precipitated the scheduling of a discharge hearing to be held on February 18, 2004. However, Plaintiff's evidence at the hearing reflected that the revocation process was initiated by the Army Litigation Division via a Memorandum sent to Maria Di Marco ("Di Marco"), Adjudications Chief at the Central Personnel Security Clearance Facility on June 24, 2002, regarding his 1987 criminal conviction. Plaintiff has submitted Army correspondence, including the Memorandum to Di Marco, which states that the reasons for the revocation of Plaintiff's security clearance is his criminal conviction. [Dkt. 67, Exh. 4–6]. Further, Defendants continue to maintain that a *pattern* of dishonesty, occurring long prior to December 22,

2002, will be presented at the discharge hearing rather than merely the most recent events, thus resurrecting the very issues resolved by the Court's February 2003 Order.

*First Amendment Retaliation—Revocation of Security Clearance*

■ There are three (3) ways for a retaliation claim to have merit. First, a Plaintiff can show such a close proximity between the adverse employment action and the protected speech as to create an inference of retaliation. *Coszalter v. City of Salem*, 320 F.3d 968, 977 (9th Cir.2003). Second, a Plaintiff can show his employer was opposed to his protected speech. *Id.* Third, a Plaintiff can show that his employer's proffered explanations for such "retaliation" were false and pretextual. *Id.*

It is widely accepted that non-frivolous litigation is constitutionally-protected free speech. *See, e.g., Lytle v. Wondrash*, 182 F.3d 1083, 1090 (9th Cir.1999); *Rendish v. City of Tacoma*, 123 F.3d 1216, 1222–23 (9th Cir.1997).

In the Order dismissing Plaintiff's claims, and noting that any First Amendment claim be brought in a separate action, the Court stated:

Plaintiff contends the administrative actions taken against him are in retaliation for his previous legal actions against Defendants and are an attempt to harass him and remove him from the Army. As such, Plaintiff's claims are . . . brought under . . . the First Amendment as retaliation claims.

Unlike due process claims, First Amendment retaliation claims do not require a final agency action or a liberty or property entitlement. Rather, the action of which a plaintiff is complaining must only be sufficiently adverse to deter the exercise of First Amendment rights. *Power v. Summers*, 226 F.3d 815, 820–21 (7th Cir.2000); *see also Nu-*

*nez v. City of Los Angeles,* 147 F.3d 867, 875 n. 11 (9th Cir.1998); *Hyland v. Wonder,* 972 F.2d 1129, 1134–35 (9th Cir.1992). Thus, Plaintiff arguably may assert First Amendment retaliation claims even if the Army has discretion in whether to take these administrative actions against Plaintiff, assuming Plaintiff's First Amendment interests outweigh the Army's need to maintain morale and discipline. *See Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974).

[Dkt. 57, p. 3].

The Supreme Court has determined that:

> While the members of the military are not excluded from the protection granted by the First Amendment, the different character of the military community and of the military mission requires a different application of those protections. The fundamental necessity for obedience, and the consequent necessity for imposition of discipline, may render permissible within the military that which would be constitutionally impermissible outside it.

*Parker v. Levy,* 417 U.S. at 760, 94 S.Ct at 2563.

■■ As such, "even if there are marginal applications to which [a statute] would infringe on First Amendment values, facial invalidation is inappropriate if the 'remainder of the statute covers a whole range of easily identifiable and constitutionally proscribable conduct.'" Id. (citing *United States Civil Svc. Comm'n v. Nat'l Assn. of Letter Carriers,* 413 U.S. 548, 580–81, 93 S.Ct. 2880, 2898, 37 L.Ed.2d 796 (1973)). Soldiers must show a respect for duty and a discipline without counterpart in civilian life. *See Brown v. Glines,* 444 U.S. 348, 354, 100 S.Ct. 594,

599, 62 L.Ed.2d 540 (1980). Therefore, a soldier's rights "must yield somewhat to meet certain overriding demands of discipline and duty..." *Id.* (quoting *Parker v. Levy,* 417 U.S. at 758, 94 S.Ct. at 2563)(internal quotations omitted). Because the military's right to command and the duty to obey must be unquestioned, the military must possess substantial discretion over its internal discipline. *Id.* at 357, 100 S.Ct. at 601.

■ Here, the specific First Amendment right that Plaintiff claims was violated is the prohibition of retaliation for free speech. As will be addressed, *infra,* the statute on which Defendants rely, namely the Smith Amendment, does not apply to security clearance revocations. As such, Defendants will not be afforded the liberal application of the statute that the Supreme Court envisioned.

Procedurally, Plaintiff states a claim of retaliation that fits into the first prong of the *Coszalter* test, *supra,* by alleging that the U.S. Army initiated proceedings to revoke his security clearance just a few weeks after the Army's assurance that they had no intention of taking any action to void Plaintiff's status as Captain, and by relying on a statute that has no application to Plaintiff at this time.

■ "The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. The goal is to prevent, or redress, actions by a government employer that chill the exercise of protected First Amendment rights." *Coszalter,* 320 F.3d at 974–75 (9th Cir. 2003) (internal quotations omitted). Further, a time period of three (3) to eight (8) months after the protected speech is not too lengthy a time to support an inference of retaliation.[10] *See id.* at 977.

---

**10.** The Ninth Circuit rejected any bright-line rule that would be applied to the timing of retaliation. Instead, the Circuit held that

"[i]n some cases, the totality of the facts may form such a clear picture that a district court

Here, the U.S. Army's issuance on January 17, 2003, of the "Intent to Revoke" Memorandum, notifying Plaintiff that a preliminary decision had been made to revoke his security clearance pursuant to the Smith Amendment, and the ultimate revocation of Plaintiff's security clearance just three (3) weeks after the Court's Order of February 28, 2003, supports an inference of retaliation.

*The Smith Amendment (10 U.S.C. § 986)*

The Smith Amendment provides that "[a]fter October 30, 2000, the Department of Defense may not grant or renew a security clearance for a person to whom this section applies who is described in subsection (c)." 10 U.S.C. § 986(a). Section (c) provides, in relevant part, that "[a] person is described in this subsection if any of the following applies to that person: (1) The person has been convicted in any court of the United States of a crime and sentenced to imprisonment for a term exceeding one year." 10 U.S.C. § 986(c)(1).[11] The statute does not provide for the revocation of an existing security clearance.

Here, Plaintiff was charged with a felony in 1987 and sentenced to eighteen months for his conviction.[12] As such, the Smith Amendment applies to Plaintiff and his security clearance, but only upon the expiration of his security clearance.[13]

The Smith Amendment gives the Department of Defense and, therefore, Defendants in this case, broad discretionary power to grant or renew security clearances. *Nickelson v. United States,* 284 F.Supp.2d 387, 392 (E.D.Va.2003). Section (d) allows, in a meritorious case, for "Secretary of Defense or the Secretary of the military department concerned [to] authorize an exception to the prohibition in subsection (a) for a person described in... subsection (c)." 10 U.S.C. § 986(d). As such, Section (d) "confers upon the Secretary the ability in a 'meritorious case' to abrogate this prohibition, entirely at his discretion." *Nickelson,* 284 F.Supp.2d at 392. These exceptions, however, are not to be issued lightly. *Id.* In passing the Smith Amendment, Congress' concern stemmed from the idea that too many convicted felons were receiving security clearances, not that some convicted felons may unjustly be denied a security clearance. *Id.* at 392–93.

*The Smith Amendment Vis-a Vis the First Amendment*

"It is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups either *by use of a statute providing*

---

would be justified in granting summary judgment, either for or against a plaintiff, on the issue of retaliatory motive; but the length of time, considered without regard to its factual setting, is not enough by itself to justify a grant of summary judgment." *Id.* at 978.

11. The Smith Amendment cannot be regarded as *ex post facto* because the statute does not permit the revocation of an existing security clearance. Rather, the Amendment prohibits the Department of Defense from granting a new security clearance, or renewing an expiring one, *after October 30, 2000.* An *ex post facto* law is "[a] law that applies retroactively, esp. in a way that negatively affects a person's

rights, as by criminalizing an action that was legal when it was committed." Black's Law Dictionary, 7th ed., p. 601 (1999).

12. Plaintiff's state convictions for conspiracy and manufacture of controlled substances were expunged in 1996. However, Plaintiff served eighteen (18) months for the federal charge of conspiracy to manufacture a controlled substance, to which Plaintiff pleaded guilty. A third charge for fraud, stemming from a check tendered with insufficient funds, was dismissed.

13. Plaintiff's security clearance does not expire until 2007.

*a system of broad discretionary licensing power* or, as in this case, the equivalent of such a system by selective enforcement of an extremely broad prohibitory statute." *Cox v. State of Louisiana,* 379 U.S. 536, 557–58, 85 S.Ct. 453, 466, 13 L.Ed.2d 471 (1965)(emphasis added). Further, a statute which, on its face, is so vague and indefinite as to permit the punishment of protected free speech, is anathema to the Fourteenth Amendment concept of liberty. *Id.* at 552, 85 S.Ct. at 463. The Supreme Court has "recognized that the lodging of such broad discretion in a public official allows him to determine which expressions of view will be permitted and which will not." *Id.* at 557, 85 S.Ct. at 466. Thus, "[i]t is clearly unconstitutional to enable a public official to determine which expressions of view will be permitted and which will not or to engage in invidious discrimination among persons or groups... by use of a statute providing a system of broad discretionary licensing power..." *Id.*

Here, the military arguably could, in meritorious cases, renew the security clearances of persons with convictions and imprisonments of more than one year, but choose to renew only when those who exercised protected free speech did so with actions advocated by the military. Such an implementation of the statute would clearly be unconstitutional. While the revocation, or non-renewal, of a soldier's security clearance, or fear of same, would not prevent the speech at issue here, namely litigation, the possibility of revocation or non-renewal could severely discourage, and be retaliation for such speech, regardless of whether the revocation or non-renewal was in accordance with the Smith Amendment.

■■■ Although the Smith Amendment does not permit Defendants to revoke Plaintiff's security clearance, Plaintiff still has the burden of showing that the U.S. Army revoked his security clearance to retaliate against him. The U.S. Army catalogued a history of alleged lies and misrepresentations by Plaintiff, committed by falsifying applications for active duty. However, Defendants waived objections in December 2002 to Plaintiff's alleged history, pursuant to the Letter, *supra,* and indicated no intention of discharging Plaintiff based on that history. They assert an entirely different posture now. There is sufficient evidence to support the inference that Defendants' mistaken application of the Smith Amendment, just three weeks after the Court's Order dismissing his claims as moot, was in retaliation for Plaintiff's litigation.

The U.S. Army's revocation of Plaintiff's security clearance twenty-three (23) days after the Court's Order supports an inference of retaliation that Defendants have failed to rebut. Further, Plaintiff has offered evidence of his exemplary service, including a letter of recommendation from Lieutenant Colonel Scott A Wesley praising Plaintiff's service in to the Army, and recommending the reinstatement of Plaintiff's security clearance. Accordingly, the Court will order reinstatement of Plaintiff's security clearance effective the date of this Order.

*Discharge Proceedings*

■■■ Defendants' argument that an alleged pattern of lies and misrepresentations for over a decade can be forgiven, as it was in December 2002, yet his action on July 10, 2003, which Plaintiff contends was based on a false assumption concerning his security status, is grounds for a show cause hearing to terminate his status, is unpersuasive. First, Defendants fail to offer a credible reason for revoking Plaintiff's security clearance *before* his July 2003 representation occurred. Second, Defendants offer no evidence as to what occurred between February 28, 2003, the date of the Court's Order dismissing Plain-

tiff's claims as moot, and March 23, 2003, the date Defendants revoked Plaintiff's security clearance, to warrant such a revocation. Third, Defendants offer no basis, aside from the July 2003 alleged misrepresentation, to proceed with a separation hearing.

The Court dismissed Plaintiff's claims on February 28, 2003, in reliance on the U.S. Army's intent not to pursue discharge proceedings against Plaintiff as stated earlier in this Order. The Court found that Plaintiff had received the relief requested. The U.S. Army effectively and knowingly waived its right to rely upon the alleged pattern of lies and misrepresentations by Plaintiff prior to December 2002 in any subsequent effort to discharge him. The Court does not erect an "impenetrable shield" for Plaintiff for significant misdeeds in the future, as Defendants suggest, but it does foreclose the U.S. Army from considering the same alleged pattern of lies and misrepresentations that Defendants agreed not to pursue in the Letter of December 2002, and from relying on the Smith Amendment until after the expiration of Plaintiff's security clearance.

During the evidentiary hearing, Army counsel argued that Plaintiff's misrepresentation of the status of his security clearance on July 10, 2003, in voluntarily seeking deployment, is "all it takes to require an officer to show cause for retention." However, Defendants, in their December 7, 2003 letter, *supra* at page 1071, to Plaintiff, contend that, in addition to the Smith Amendment, other reasons existed to revoke Plaintiff's security clearance, such as "submitting false documents, submitting false information and your fraudulent enlistment in the Texas Army National Guard" on June 27, 1996. [Dkt. 67, Exh. 6–1].

Based on the Court's Order of February 28, 2030, Defendants may not initiate discharge proceedings based upon the alleged pattern of lies and misrepresentations that occurred prior to December 2002.

### Legal Standard—Contempt

" 'The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court.' " *In re Dyer*, 322 F.3d 1178, 1190–91 (9th Cir.2003)(quoting *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir.2002)). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir.1999).

### Revocation of Security Clearance as Contempt

The Court finds that Defendants' revocation of Plaintiff's security clearance was in contravention to the Court's Order of February 28, 2003. However, while Defendants' reliance on the Smith Amendment, shortly after the Order, supports an inference of retaliation, the issue of contempt will not be resolved at this stage of the proceedings.

### Conclusion

Plaintiff has met his burden for issuance of a preliminary injunction, by showing the possibility of success on the merits of his retaliation claim and the possibility of irreparable injury. Defendants have failed to rebut the inference of retaliation. As such, Plaintiff's security clearance shall be reinstated. Defendants are not found in contempt of the Court's Order dated February 28, 2003, at this time. However, Defendants will be enjoined from taking any action to discharge, demote, or otherwise voiding or suspending Plaintiff's status as Captain, or to revoke Plaintiff's security clearance, based upon Plaintiff's actions prior to December 2002.

Accordingly, and pursuant to the hearing held on February 20, 2004,

IT IS ORDERED that all pending motions as of February 20, 2004, in the case numbered CIV 03–0555–PHX–EHC are DENIED without prejudice. [Dkts. 18–1, 18–2, 18–3, 19–1, 20–1, 20–2, 33–1, 34–1, 35–1, 35–2, 35–3, 40–1, 41–1, 42–1, 42–2, 42–3, 43–1].

IT IS FURTHER ORDERED that all pending motions as of February 20, 2004, in the case numbered CIV 03–1252–PHX–EHC are DENIED without prejudice. [Dkts. 5–1, 6–1].

IT IS FURTHER ORDERED that cases numbered CIV 03–0555–PHX–JAT, CIV 03–1252–PHX–JAT, CIV 03–1321–PHX–JAT, CIV 03–1693–PHX–JAT shall be consolidated into case number CIV 02–0967–PHX–EHC, and all future filings in any of these cases should reflect the case number CIV 02–0967–PHX–EHC.

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction is GRANTED. [Dkt. 75–3].

IT IS FURTHER ORDERED that Defendants are enjoined from taking any action to discharge, demote, or otherwise voiding or suspending Plaintiff's status as Captain, or to revoke Plaintiff's security clearance, based upon Plaintiff's alleged history of lies and misrepresentations prior to December 2002. [Dkt. 75–3].

IT IS FURTHER ORDERED that Plaintiff's Motion for Declaratory Judgment is STAYED without prejudice to consideration at an appropriate time. [Dkt. 75–4].

IT IS FURTHER ORDERED that Plaintiff's Motion to Find Defendant's in Contempt will be addressed, if necessary, at a future hearing. [Dkt. 75–5].

## APPENDIX

### Chronology of Events

### Wright v. U.S. Army Total Personnel Command, et al. (02 CIV 967)

May 24, 2002: Complaint filed (numbered CIV 02–0967–PHX–EHC).

December 12, 2002: Letter from Lieutenant Colonel Rafe R. Foster to U.S. Attorney Paul K. Charlton, which was attached as Exhibit 1 to Defendants' Motion to Dismiss [Dkt. 54], and states, in relevant part:

> Based on the reasoning of the U.S. District Court in issuing the preliminary injunction, this command does not intend to take action to void Andrew Wright's status as a captain, U.S. Army Reserve, on or after 20 December 2002.
>
> Captain Wright is currently serving on a tour of extended active duty. Future actions after 20 December 2002 to extend that active duty tour or to allow that tour to terminate on its end date with Captain Wright's release to the Individual Ready Reserve will be in accordance with all laws and regulatory standards applicable to similarly situated officers of the U.S. Army Reserve who are serving on active duty.

[Dkt. 54, Exh. 1].

January 17, 2003: "Intent to Revoke" Memorandum issued by the Department of the Army Central Personnel Security Clearance Facility, notifying Plaintiff that a preliminary decision had been made to revoke his security clearance pursuant to the Smith Amendment.

February 25, 2003: Letter from Lieutenant Colonel Scott A. Westley recommending that Plaintiff's security clearance be reinstated and opining that he does not doubt Plaintiff's loyalty to the United States or his willingness to serve in the Army.

**February 28, 2003:** Court Order dismissing Plaintiff's Fifth Amendment and due process claims because "Plaintiff has received the relief he requested" pursuant to the Letter from Lieutenant Colonel Rafe R. Foster to U.S. Attorney Paul K. Charlton. [Dkt. 57, p. 4].

**March 23, 2003:** Defendants revoke Plaintiff's security clearance pursuant to the Smith Amendment.

**July 10, 2003:** Plaintiff submits Application for Active Duty, in which he fills in the box under "Security Clearance" with the word "Secret." [Hearing Exh. 29, p. 7]. Both parties stipulate to the fact that Plaintiff's security clearance had been revoked at the time. Plaintiff alleges he believed that the Court's Order, dated February 28, 2003, required Defendants to reinstate Plaintiff's security clearance.

**October 17, 2003:** Plaintiff sends email correspondence to Colonel Bruce Berwick requesting his security clearance be reinstated. [Dkt. 67, Exh. 4–6].

**October 21, 2003:** Colonel Bruce Berwick responds via email correspondence to Plaintiff's request for a waiver to the requirement that his security clearance be revoked. Colonel Berwick writes that "[g]iven your criminal conviction, and the determination of the Personnel Security Advisory Board, [Secretary Brownlee] will not consider a meritorious waiver at this time." [Dkt. 67, Exh. 4–6].

**October 23, 2003:** Plaintiff sends email correspondence to Colonel Bruce Berwick requesting an exception to his security clearance revocation pursuant to the Court's Order dated February 28, 2003, which Plaintiff contends "estopped [the Army] from using my conviction against me in any personnel action." [Dkt. 67, Exh. 4–6].

**December 7, 2003:** Memorandum from Major General James R. Scholar, U.S.

Army Reserve, notifying Plaintiff that "... I am initiating involuntary separation against you..." [Hearing Exh. 1].

**December 19, 2003:** Plaintiff files a Motion for Order to Show Cause why Defendants should not be held in contempt of court for violating the Order dated February 28, 2003.

**January 7, 2004:** Plaintiff files a Motion for Temporary Restraining Order and Preliminary Injunction. [Dkt. 63].

**February 3, 2004:** Defendants notify Plaintiff of upcoming hearing to take place at the Armed Forces Reserve Center in North Little Rock, Arkansas, on February 18, 2004. The "subject" of the Memorandum is listed as "Notification of Show Cause Board." The Memorandum, issued by the Department of the Army, states that "[t]he hearing [is] to consider CPT Andrew K. Wright... for administrative separation for intentional misstatement of facts in official statements or records, for the purpose of misrepresentation and conduct unbecoming an officer..."

**February 12, 2004:** Order granting Plaintiff's Motion for Temporary Restraining Order. [Dkt. 81].

**February 20, 2004:** Evidentiary hearing conducted by the Court regarding Plaintiff's Motion for Preliminary Injunction and the activities leading up to the U.S. Army's decision to hold an administrative separation hearing at the Armed Forces Reserve Center in North Little Rock, Arkansas.